**Maurice C. PARADIS, Director of the Department of Business Regulation**

v.

**HERITAGE LOAN AND INVESTMENT COMPANY, Claims of North American Laborers' Defense League and Emmanuel DiMundo.**

No. 96–178–Appeal.

Supreme Court of Rhode Island.

May 1, 1997.

Normand G. Benoit, Providence.

Joseph Avanzato, William Russo, Raymond LaFazia, Edward Maggiacomo, Providence.

**ORDER**

This case came before a hearing panel of the Supreme Court for oral argument on April 15, 1997, pursuant to an order directing the parties to appear and show cause why this appeal should not be summarily decided. After hearing oral arguments and examining the memoranda submitted by the parties, we are of the opinion that cause has not been shown and that the issues raised by this appeal should be summarily decided at this time.

The defendants, Emmanuel DiMundo (DiMundo), and the North American Laborers' Defense League (NALDL), appeal from a Superior Court judgment denying their petitions for an order directing the Receiver of Heritage Loan and Investment Company (Heritage), to show cause why previously allowed interest claims on their accounts with Heritage should not be paid as part of Heritage's priority receivership administrative expenses, pursuant to G.L. 1956 § 9–15–7(a)(1).

Both DiMundo and NALDL had "off-line"[1] accounts at Heritage when that financial institution was placed under receivership on November 18, 1990. The two "off-line" accounts were questioned by the receiver. The DiMundo account in the amount of $96,293.06 had been originally opened by a Mario Falsco (Falsco), and DiMundo's name was later added to the account in 1987 or 1989. Falsco, however, never filed any claim with the receiver concerning the account, and only DiMundo filed a receivership claim. The NALDL account, according to the Heritage records, had total deposits of $420,000, all of which had been withdrawn by bank documents purportedly signed by Arthur Coia (Coia), and dated October 16, 1990, some several weeks prior to Heritage being placed under receivership. Coia's signatures were later found to have been forgeries.

On January 1, 1991, the then Governor, by executive order, closed a number of Rhode Island Share and Deposit Insurance Corporation (RISDIC)–insured state financial institutions, precipitating the now historic state financial banking crisis. Heritage, because it was already in receivership, was not included in the original Depositor's Economic Protection Corporation (DEPCO) statute, enacted in January 1991, spawned by the then existing banking crisis. G.L. 1956 Title 42, chapter 116. However, on January 25, 1991, the Heritage receiver, with court approval, closed Heritage and terminated its banking operation. In early 1992, the DEPCO legislation was amended so as to include Heritage. That legislative inclusion served to provide Heritage depositors, including the appellants, with the same taxpayer benefits provided to the depositors in the other failed RISDIC–insured banking institutions.

The Presiding Justice of the Superior Court, in order to facilitate the purpose of the DEPCO legislation, specially assigned Justice Robert Krause, one of the justices of that court, to hear all DEPCO related mat-

---

1. The term "off-line" accounts referred to accounts that Joseph Mollicone, Jr., the president of Heritage, had not entered into the Heritage computer records.

ters. On February 5, 1992, Justice Krause entered an order permitting the DEPCO receiver to make an interim distribution of funds to some of the Heritage depositors, but not on the DiMundo or NALDL accounts, because those accounts were then still being investigated and examined by the Heritage receiver.

On May 29, 1992, the receiver for Heritage sought Superior Court approval to enter into an asset purchase agreement with the DEPCO receiver. After hearing and without objection, the asset sale was approved and, on June 22, 1992, a final Superior Court order and judgment was entered approving the transfer of all Heritage assets to DEPCO and fixed all deposit liabilities as of November 18, 1990, including interest, until that date. The DiMundo and NALDL account liabilities were included in that order, and neither depositor objected or appealed.

Some two years later on April 13, 1994, a Superior Court special master, who had been assigned to hear questioned depositor claims, issued an order and judgment on the DiMundo claim. He approved that claim in the amount of $77,424 plus interest at 12 percent from January 25, 1991. Shortly thereafter, on May 19, 1994, the special master approved NALDL's claim in the amount of $420,000 and also awarded 12 percent interest thereon from June 25, 1991. The Heritage receiver paid the account amounts as found by the special master but refused to pay the interest awarded on each. DiMundo and NALDL then filed petitions in the Superior Court requesting an order directing the Heritage receiver to show cause why the previously allowed interest claims should not be paid. The receiver objected to those petitions and also filed an appeal from the special master's decisions ordering interest to be paid on the DiMundo and NALDL accounts. The trial justice found that the special master should not have awarded interest on the accounts. He also denied the DiMundo and NALDL petitions requesting an order for payment of that interest.

We have reviewed the trial justice's decision and his reasons given to support his conclusion that the appellants here are not entitled to receive interest from the Heritage receiver on their accounts. We discern no error therein. The trial justice has correctly noted that any award of interest after November 19, 1990 on the two accounts was effectively foreclosed by the June 22, 1992 unappealed final order entered by Justice Krause that approved the sale and transfer of Heritage assets to DEPCO.

In addition, the trial justice also correctly noted that the appellants' alternative contention in which they assert that the claimed interest should be treated as a priority Heritage receivership expense, to be funded by DEPCO, fails in light of Justice Krause's order of notice issued on May 28, 1992 barring requests for administrative expenses under § 19–15–7(a)(1) after June 10, 1992. The trial justice also found that the statute would not itself permit the nature of interest being claimed to be considered as an administrative expense. We agree.

The appeals are denied and dismissed. The papers in this case are ordered returned to the Superior Court.

WEISBERGER, C.J., and FLANDERS, J., did not participate.